HENRY B. TYLER

*vs.*

GEORGE W. WALKER, PAYMASTER OF THE UNITED STATES MARINE CORPS.

AT LAW.   DECIDED JANUARY 23, 1851.

*Action of Assumpsit.*

1. That under the sixth section of the Act of Congress of August 23rd, 1842, allowing certain officers, while commanding separate posts, double rations, among being "the commandant of each permanent or fixed post garrisoned with troops." Under the evidence it was *Held*, that the marine station at the Navy Yard in Washington was a permanent or fixed post garrisoned by troops, and therefore the plaintiff is entitled to the rations allowed by said act.

2. That this Court had jurisdiction over this case.

3. That in all cases where jurisdiction depends on the party it is the party named in the record, consequently the 11th Amendment of the Constitution, which restrains the jurisdiction granted by the Constitution over suits against the States or the government is limited to those suits in which a State or the government is a party on the record.

Bill as rendered Major George W. Walker, to Capt. Henry B. Tyler, Dr.

For amount retained in your hands as Paymaster of the U. S. Marine Corps, for double rations due the said Capt. Tyler as commandant of a detachment of marines, stationed at the Navy Yard, Washington, from the 1st of December, 1849, to the 30th of September, 1850.

305 days, at 4 rations per day, is 1,220 complete
rations, at 20 cents per ration, is   .   .   .   $244.00

For allowance for responsibility and safe keeping of
the clothing, arms and accoutrements of said detach-
ment, due the said Capt. Tyler from October 1, 1849,
to 30th of September, 1850; 12 months at $10 per
month, is   .   .   .   .   .   .   .   $120.00

Total,   .   .   .   .   .   .   $364.00

HENRY M. MORFIT, Esq., for the plaintiff.

RICHARD S. COXE, Esq., for the defendant.

This is an action in assumpsit to recover $364.00, the amount of double rations, and for the responsibility of arms, accoutrements, &c., and for the safe keeping and issuing of clothing, payable to the said plaintiff as Captain in said Corps, while commanding a detachment of marines at the Navy Yard, Washington City, as a permanent and fixed post garrisoned with troops from 1st of October, 1849, to the 30th of September, 1850, which amount has been withheld by said defendant from the said plaintiff.

This action is brought to ascertain whether the said Post at the Navy Yard, Washington, was during that time above named a permanent or fixed post garrisoned with troops, and if so, to recover the amount set forth in the declaration.

This action is to be docketed by consent, and the Clerk of the Circuit Court of the District of Columbia, for the County of Washington, is hereby authorized and requested, and so to enter it upon the trial docket of the October term of 1850, so that a trial may be had as speedily as may be.

HENRY B. TYLER, Captain U. S. Marines.

GEORGE W. WALKER, Paymaster U. S. Marine Corps.

It is agreed in this case that the plaintiff is a captain in the Marine Corps of the U. S., and that the defendant is a paymaster in the same corps. Under the circumstances mentioned this suit is an amicable one, and docketed at the instance of the Second Comptroller of the Treasury, for the single purpose of obtaining a legal abjudication of the question, whether the plaintiff is entitled to the allowance claimed by him; and it is agreed to submit the question to this Court, and that the accompanying papers filed herewith are admitted to be competent evidence to prove the facts stated in them respectively.

The above is signed by the several counsels.

The papers referred to above are mentioned in the opinion of the Chief Judge.

The following is the opinion of William Cranch, Chief Judge.

Case agreed and docketed by consent, to try the right of the Captain of Marines, at the Navy Yard in Washington, to double rations as commandant "of a permanent or fixed post garrisoned with troops."

Within the meaning of the 6th Section of the Act of Congress of the 23d of August, 1842, by which it is enacted that the rations authorized to be allowed to each officer while commanding a separate post, by the Acts of March 3d, 1797 and March 16th, 1802, shall be allowed only certain officers, among whom is included "the commandant of each permanent or fixed post garrisoned with troops."

It is admitted by the counsel of both parties that the only matter to be submitted to the Court, upon the evidence filed, is whether the post at the Navy Yard, when commanded by Captain Tyler, was a separate permanent post garrisoned with troops?

Upon that question the evidence is:

1st. That Captain Tyler commanded the Marines at the Navy Yard, stationed during the period claimed for, and that the defendant Walker was Paymaster of the said Marines during the same period.

2nd. The order of Mr. Badger, Secretary of the Navy, of the 30th of July, 1841, "that double rations should be allowed to the commanding marine officers at the Navy Yards, or upon the Marine Stations at Portsmouth, N. H., Boston, New York, Philadelphia, Washington, Norfolk and Pensacola."

3rd. Letter of General Henderson to Captain Tyler, approved by the Secretary of the Navy 15th September, 1843, re-establishing the post at the gate-way at the Navy Yard in Washington, which had been suspended on the 2nd of September of the same year.

4th. Affidavit of D. H. Smith, Chief Clerk in the Paymaster's Office of the Marine Corps at Washington, that Captain Stark, from 15th of July, 1848, to 31st of August of that year, was stationed at the Navy Yard in Washington, in command of a guard or detachment of Marines, and as commandant of that post received double rations and $10 a month for the responsibility and safe keeping of the arms,

accoutrements and clothing of the detachment. That Captain
Tyler succeeded him in that command and continued there
from the 1st of October, 1848, until the present time. That
it appears by the records in the office of the Adjutant and
Inspector that Captain Levy Twiggs was in command of said
post from Nov. 6th to Dec. 31, 1830, and received double
rations. That the propriety of such payment was never to his
knowledge questioned until recently in the case of Captain
Tyler, for the purpose of having it decided as he understood
in Court.

From this evidence I am satisfied that the Marine Sta-
tion at the Navy Yard in Washington was, (at the time
when, &c.) "a permanent or fixed post garrisoned with
troops."

But a doubt is suggested whether this Court has juris-
diction of the case, because the U. S. is the real defendant and
cannot be sued. The answer is, that for that very reason
the suit must be against the officer who has the money in his
hands to pay to the plaintiff, if in law or in equity he is
entitled to it.

In the case of Osborn, 9 Wheat., 738, the same question
was raised and argued. This was a suit against an officer of
the State of Ohio, and it was contended in p. 756 by the de-
fendant that "if the State be the only party interested, and
if the bill in its terms and in its effect operates solely upon
the State, the State ought to be made a party. If the Circuit
Court cannot exercise jurisdiction where a State is a party
direct, it ought not, it cannot, be permitted to obtain that
jurisdiction by an indirect mode of proceeding. The reasons
which exempts the State from direct responsibility operate
at least equally strong to exempt her from indirect respon-
sibility."

Page 802, " Here the sole interest is in the State of Ohio.
She is therefore an indispensable party to the bill, but she
cannot be made a party because she cannot be sued. The
inevitable consequence is that the Court below cannot take
cognizance of the cause."

Page 842, Ch. J. Marshall—"The objection is, that as
the real party cannot be brought into Court, a suit cannot be

sustained against the agents of that party; and cases have been cited to show that a Court of Chancery will not make a decree unless all those who are substantially interested be made parties to the suit."

"This is certainly true where it is in the power of the plaintiff to make them parties, but if the person who is the real principal—the person who is the true source of the mischief—by whose power and for whose advantage it is done be himself above the law, be exempt from all judicial process, it would be subversive of the best established principles to say that the laws could not afford the same remedies against the agent employed in doing the wrong, which they would afford against him, could his principal be joined in the suit."

Again in page 843 the Ch. J. says: " Will it be said that the action of trespass is the only remedy given for this injury? Can it be denied that an action on the case for money, had and received to the plaintiff's use, might be maintained? We think it can." Again in page 846 the Chief Justice says, " The bill is brought, it is said, for the purpose of protecting the bank in the exercise of a franchise, granted by a law of the U. S., which franchise the State of Ohio asserts a right to invade. It prays the aid of the Court to restrain the officers of the State from executing the law. It is then a controversy between the bank and the State of Ohio. The interest of the State is direct and immediate, not consequently. The process of the Court, though not directed against the State by name, acts directly upon it by restraining its officers. The process therefore is substantially, though not in form against the State, and the Court ought not to proceed without making the State a party. If this cannot be done, the Court cannot take jurisdiction of the case."

"The full pressure of this argument is felt, and the difficulties it presents are acknowledged. The direct interest of the State, in the suit as brought, is admitted, and had it been in the power of the bank to make it a party, perhaps no decree ought to have been pronounced in the cause until the State was before the Court. But this was not in the power of the Bank."

"The 11th Amendment of the Constitution has exempted a State from the suits of citizens of other States or aliens, and the very difficult question is to be decided whether in such a case a Court may act upon the agents employed by the State and on the property in their hands."

Again in page 851 the Chief Justice says: "Do the provisions then of the American Constitution respecting controversies to which a State may be a party extend, on a fair construction of that instrument, to cases in which a State is not a party on the record?"

"The first in the enumeration is a controversy between two or more States."

In page 853 he says: "The next in the enumeration is a controversy between a State and the citizens of another State. Can this case arise if the State be not a party on the record? If it can, the question recurs, what degree of interest shall be sufficient to change the parties and arrest the proceedings against the individual?"

Again in page 857 he says: "It may, we think, be laid down as a rule, which admits of no exception, that *in all cases where jurisdiction depends on the party, it is the party named in the record;* consequently the 11th Amendment, which restrains the jurisdiction granted by the Constitution over suits against States, is of necessity, limited to those suits in which a State is a party on the record."

This case seems to me to be decisive of this point, and as all the facts necessary to a decision of the case are admitted by the parties, I think judgment should be rendered upon the case agreed for the sum claimed by the plaintiff.

This case being heard upon the evidence and examination of the laws in relation to the subject, the Court is of the opinion that the post at the Navy Yard, Washington City, commanded by the plaintiff from the 1st of December, 1849, to the 30th of September, 1850, was a permanent post garrisoned with troops, and that said plaintiff, Captain Henry B. Tyler, is entitled to double rations and allowances for responsibility and safe keeping of the clothing, arms and accoutrements of his detachment for the time as claimed, and that upon payment thereof by the said defendant as Paymaster of

the Marine Corps, he should be entitled to credit for it in his accounts by the accounting officers of the Treasury.

January 3, 1851.

Judge Dunlop's dissenting opinion given December 5th, 1850.

I do not think we have any jurisdiction to try and decide this case.

It is in substance a suit against the U. S., who are not made parties, and who cannot be sued.

It is not alleged that Mr. Walker, the defendant, owes any money in his own right to the plaintiff. He has no money of the plaintiff in his hands as paymaster, because the United States, whose agent he is, have not admitted the claim. The Comptroller of the Treasury cannot, by his consent, transfer to this Court the discharge of an executive duty which he and the accounting officers ought themselves to perform.

They must construe for themselves the Acts of Congress applicable to the case, when they are called upon to allow the plaintiff's claim.

We can only obtain jurisdiction or the right to construe these laws affecting the rights of the United States in any case, as I suppose, than a case in which the United States are plaintiffs and Mr. Walker the paymaster is a defendant.

If Mr. Walker had paid the money claimed to the plaintiff, and the Treasury officers had disallowed it to him in his accounts, and he having money of the United States in his hands retained for the claim, and the United States sued him, a case would arise in which we could give an opinion and render a lawful judgment.

In this case it is not pretended we can give judgment against Mr. Walker, because he personally owes the plaintiff nothing.

The judgment, we are asked to give, is not against Mr. Walker, but substantially against the United States; we are asked by the judgment to control the Comptroller and the Accounting officers, which we have no right to do, and which, if we attempted to do, we could not enforce by any compulsory process.

Facts presented December 5th, 1850, which were not mentioned before Judge Dunlop made his opinion.

The counsel on both sides having seen the views taken by Judge Dunlop, desire to add some facts and admissions, which would have been presented if the case had been heard at bar.

First, it is not in substance a suit against the United States, because the defendant admits that he, and not the United States or its officers, suspends the amount claimed by Captain Tyler, and that it is not an official act, but one done to try whether the post at the Navy Yard is a separate, permanent post. It is admitted that Captain Tyler, Commander at the Navy Yard station, during the period claimed for, and that he is entitled to recover of the defendant, if the Court say that he commanded a separate post, or that the Navy Yard station was a permanent post.

Second, it is alleged that Mr. Walker owes the money—he holds it against both the United States and the defendant—against the United States because he says Captain Tyler is entitled to it; and against Captain Tyler because, though entitled to it if he commanded a separate post, he must first show that such post was a separate one in fact or in law. It is admitted that the money claimed is in the hands of the defendant to pay the plaintiff, if he commanded a permanent post. The Comptroller does not attempt to transfer any jurisdiction, but merely says: as this is a question of law as to whether the post at the Navy Yard was a permanent post; that question should be decided by the Court, and that he would acquiesce in it.

The rights of the United States will not be affected by this decision, as the Paymaster will hold the money as a stake holder for Captain Tyler, even if the decision is against Captain Tyler.

In the case of Brown, Paymaster of the same corps *vs.* Captain Twiggs, upon a similar question of double rations, the Court did entertain jurisdiction, although the United States was affected by it, for it decided not only against the Paymaster, but also that he was entitled to a credit for it in his public accounts.

Besides in Osbern *vs.* The Bank of U. S., 9 Wheat., 738, the Supreme Court held that an officer of the government, who holds money under color of law *virtute officei* is sueable, and for the very reason, that if not the citizen would lose his remedy as the State or government is not directly the subject of a suit.

But the counsel agree that the only matter to be submitted to the Court, upon the evidence filed, is whether the post at the Navy Yard, when commanded by Captain Tyler, was a permanent Post garrisoned with troops.

December 7th, 1850.